Birch St. Recovery v. Thomas          CV-99-571-B    07/29/00

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Birch Street Recovery Corp., et al.**

    **v.**                                        Civil No. 99-571-B
                                              Opinion No. 2000 DNH 176
**Thomas J. Thomas, Jr., et al.**


MEMORANDUM AND ORDER

Birch Street Recovery Corporation and two other New Hampshire corporations have filed suit against a host of defendants, including a law firm and lawyers (the "law firm defendants"), an accounting firm and accountants (the "accounting firm defendants"), and individuals and entities associated with the Gaudette family. Plaintiffs have brought claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, for civil conspiracy, and for violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. chapter 358-A.[1] Plaintiffs request injunctive

_____

[1] Plaintiffs also asserted a claim of bankruptcy fraud under 18 U.S.C. § 152. See Verified Compl. (Doc. #1) ¶¶ 95-98

relief and damages (in the amount of 1.5 million dollars or actual damages), plus attorney's fees and costs. Plaintiffs also seek treble damages for the alleged violations of RICO and the New Hampshire Consumer Protection Act.[2]

The law firm defendants have moved to dismiss all claims against them pursuant to Federal Rule of Civil Procedure

---

(Count II). As plaintiffs have since conceded, see Mem. in Opp'n to Mot. by Law Firm Defs. to Dismiss (Doc. #16) at 2, this criminal statute does not provide a civil cause of action. Accordingly, Count II is dismissed for failure to state a claim. I consider paragraphs 96 and 97 of the complaint as alleging predicate acts of racketeering in support of plaintiffs' civil RICO claim. This reading of the complaint grants in substance plaintiffs' request for leave to amend the complaint, see id., without requiring them to file a formal amendment.

[2] This court has subject matter jurisdiction based on the presence of a federal question arising under the RICO statute. See 28 U.S.C. § 1331 (1994). However, contrary to plaintiffs' suggestion, see Verified Compl. (Doc. #1) ¶ 6-7, jurisdiction based on diversity of citizenship does not appear to exist, because all three of the plaintiffs and at least some of the defendants are domiciled in New Hampshire. See id. ¶¶ 8-10, 25-26; Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 27 (1st Cir. 2000) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996); Strawbridge v. Curtiss 7 U.S. (3 Cranch) 267, 267 (1806)) (stating "complete diversity" rule).

12(b)(6).[3]  For the following reasons, I grant the law firm defendants' motion.

## I.

The allegations contained in plaintiffs' complaint are vague but voluminous.  The following is a summary of those allegations, construed in the plaintiffs' favor.

The plaintiffs in this action are three New Hampshire corporations known respectively as Birch Street Recovery Corp., GER Recovery Corp., and JAAJ Realty Corp.  Plaintiffs describe themselves as "holders of claims, judgments, attachments, and

---

[3]  The motion to dismiss was filed solely on behalf of the law firm defendants.  The other defendants have attempted to adopt the arguments made in the motion to dismiss, see Defs.' Report of Planning Meeting (Doc. #22) at 3, and also have identified many of those same arguments as affirmative defenses in their answers.  See Answer and Affirmative Defenses of Ring, Black, Dolan, Wheeler, and Wheeler, Ring & Dolan, P.C. (Doc. #9) at 11-13; Answer and Statement of Affirmative Defenses of Defs. Gaudette, Robinson and Boulevard Drive-In, Inc. (Doc. #18) ¶¶ 105, 106, 108; Answer and Affirmative Defenses of Def. Maple Street, Inc. (Doc. #21) ¶¶ 105-11.  Nevertheless, in the absence of a formal motion to dismiss by any of the other defendants, this order applies only to plaintiffs' claims against the law firm defendants.

causes of action against Louise L. Gaudette, Reginald L. Gaudette, The Resource Clinic, Inc., OFS Lending, Inc., J&L Family Limited Partnership III, Louise L. Gaudette Family Limited Partnership II, Gaudette Associates Pension Plan and Trust, and OFS Pension Plan."  Verified Compl. (Doc. #1) ¶ 2 (footnote omitted).

The many individuals and entities named as defendants appear to fit roughly into three groups.  The first group -- the "law firm defendants" -- consists of four New Hampshire attorneys (Thomas J. Thomas, Jr., Marc L. Van De Water, Glenn C. Raiche, and Mitchell P. Utell) and two law firms (Thomas & Utell, a general partnership, and Thomas, Utell, Van De Water and Raiche, a partnership) in which the attorneys are partners.  The second group -- the "accounting firm defendants" -- consists of four New Hampshire certified public accountants (Mark S. Ring, John S. Dolan, David A. Wheeler, and Michael T. Black) and the professional corporation (Wheeler, Ring & Dolan, P.C.) in which they practice.  The third group consists of various individuals

(Louise L. Gaudette, Jeffrey Gaudette, Edith Gaudette, Lionel Gaudette, and Lisa Robinson) and entities (Boulevard Drive-In, Inc., and Maple Street, Inc.) apparently associated with the Gaudette family.

As noted previously, plaintiffs allege that defendants violated the federal RICO statute, engaged in a civil conspiracy, and violated the New Hampshire Consumer Protection Act. All three of these claims arise out of plaintiffs' assertion that the defendants fraudulently transferred and concealed assets and/or income belonging to the Gaudettes or entities under their control. According to plaintiffs, a primary purpose of this "asset protection enterprise" was to hinder creditors of R&R Associates of Hampton (hereinafter "R&R Associates"), a bankrupt general partnership in which Reginald Gaudette was general partner, from collecting on debts owed to them. The defendants purportedly carried out their enterprise by forming various limited partnerships and other entities (designated by plaintiffs as the "enterprise entities") and fraudulently transferring to

-5-

those entities assets and/or income that otherwise would have been part of the R&R Associates bankruptcy estate.[4]

Plaintiffs claim that the Gaudettes' lawyers and accountants played an integral role in the asset protection enterprise. According to plaintiffs, both the law firm defendants and the accounting firm defendants knowingly participated in various aspects of the corrupt enterprise. Plaintiffs claim that the law firm defendants, either acting alone or in conjunction with other defendants, took a variety of specific actions in furtherance of the asset protection scheme, including: creating and funding the "enterprise entities"; preparing and filing the Chapter 11 petition and schedules in the R&R Associates bankruptcy proceedings; making various misrepresentations to state and

_____

[4] The "enterprise entities" specifically identified by plaintiffs are: Reginald L. Gaudette Family Limited Partnership I, Louise L. Gaudette Family Limited Partnership II, J&L Family Limited Partnership III, The Resource Clinic, Inc., OFS Lending, Inc., Gaudette Associates Pension Plan and Trust, OFS Pension Plan and Trust, LLG Services, Inc., and C&G Partnership. See Verified Compl. (Doc. #1) ¶ 34. There is substantial overlap between these "enterprise entities" and the entities against which plaintiffs claim to hold "claims, judgments, attachments, and causes of action." Compare id. ¶ 2 with id. ¶ 34.

federal courts; acting as counsel to R&R Associates as debtor-in-possession; and reviewing, revising, and mailing fraudulent financial statements to the FDIC, a creditor of the Gaudettes.

Plaintiffs also allege that the law firm defendants, along with other defendants, engaged in wrongdoing in connection with Reginald Gaudette's Chapter 7 bankruptcy proceedings. Specifically, plaintiffs allege that the law firm defendants made various misrepresentations to the bankruptcy court, to unspecified tax authorities, and to an expert witness who testified in the proceedings. All of these misrepresentations, plaintiffs allege, were intended to persuade the bankruptcy court that Reginald Gaudette's pension plan should be excluded from his bankruptcy estate on the ground that the plan was "ERISA qualified."

## II.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's complaint must "set forth 'factual allegations, either direct or inferential, regarding each

material element necessary to sustain recovery.'" Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). When applying this standard, I must accept the well-pleaded facts of the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Miranda v. Ponce Fed. Bank, 948 F.2d 41, 43 (1st Cir. 1991). I may dismiss the complaint "only if, when viewed in this manner, the pleading shows no set of facts which could entitle the plaintiff to relief." Gooley, 851 F.2d at 514 (citing Conley v. Gibson, 355 U.S. 41, 45-48 (1957)).

The threshold for stating a claim under the federal rules "may be low, but it is real." Id. While I must construe all well-pleaded facts in the plaintiff's favor, I need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Doyle, 103 F.3d at 190 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)) (internal quotation marks omitted).

In civil RICO cases, which necessarily involve allegations

of criminal conduct, "particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." Miranda, 948 F.2d at 44. The First Circuit has recognized that "[c]ivil RICO is an unusually potent weapon--the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly." Id. For these reasons, the First Circuit has advised that "courts should strive to flush out frivolous [civil] RICO allegations at an early stage of the litigation." Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990).

### III.

### A.   Civil RICO, 18 U.S.C. §§ 1961-1968 (Count I)

Plaintiffs' civil RICO claim is founded on the assertion that the defendants fraudulently conveyed and concealed assets and/or income that would otherwise have been part of the R & R Associates bankruptcy estate and thereby limited plaintiffs' ability to collect on judgments and/or debts owed to them. See

Verified Compl. (Doc. #1) ¶¶ 2, 3, 44, 48, 53, 63.  Plaintiffs allege that the law firm and accounting firm defendants counseled and helped the Gaudettes to conceal such assets and/or income by means of the "enterprise entities."  See id. ¶¶ 32-34, 45-49. According to plaintiffs, the defendants committed a variety of racketeering activities, including mail fraud, bankruptcy fraud, witness tampering, and money laundering, in the course of perpetrating the asset protection enterprise.  See id. ¶¶ 1, 36, 38, 41, 42, 44.  Plaintiffs claim that the defendants are thus liable for unlawful racketeering activity in violation of 18 U.S.C. §§ 1962(a), (b), and (c).  See id. ¶¶ 37, 39, 40.

1.   **Violation of § 1962(a)**

Plaintiffs charge that the defendants violated 18 U.S.C. § 1962(a), which prohibits the use or investment of racketeering proceeds in the acquisition, establishment, or operation of a RICO enterprise.[5]  The law firm defendants argue that plaintiffs'

_____

[5]  18 U.S.C. § 1962(a) provides in relevant part:

It shall be unlawful for any person who has received

-10-

§ 1962(a) claim must be dismissed because the allegations in plaintiffs' complaint fail to establish that plaintiffs have standing to bring a civil action under the RICO statute.[6] See Mem. in Supp. of Law Firm Defs.' Mot. to Dismiss (Doc. #8) at 5-8. Because, as I explain below, plaintiffs have not alleged the requisite "use or investment injury," they lack standing to bring a claim under § 1962(a).[7]

---

any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a) (1994).

[6] While the law firm defendants' standing argument is more clearly focused on plaintiffs' § 1962(c) claim than their claims under §§ 1962(a) or (b), see Mem. in Supp. of Law Firm Defs.' Mot. to Dismiss (Doc. #8) at 5-8, the argument is sufficiently broad in scope to place plaintiffs on notice that their standing with regard to the entirety of their civil RICO claim was at issue.

[7] Because I find that plaintiffs lack standing to bring a § 1962(a) claim, I need not address the law firm defendants' other challenges to that claim. I note, however, that plaintiffs'

The First Circuit has adopted the so-called "investment use rule," under which a plaintiff seeking to recover for a violation of § 1962(a) must allege a specific injury caused by the defendant's use or investment of racketeering proceeds. See Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 91 (1st Cir. 1995); System Management, Inc. v. Loiselle, 91 F. Supp.2d 401, 416 (D. Mass 2000); Trustees of Boston Univ. v. ASM Communications, Inc., 33 F. Supp.2d 66, 73 n.7 (D. Mass. 1998). This rule follows from the statutory requirement that a plaintiff has standing to bring a civil RICO claim only if he or she can establish an injury to his or her "business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (Supp. 1996).[8] Accordingly,

_____

failure to plead a pattern of racketeering activity, see infra, provides an independent basis for dismissal of their entire civil RICO claim, including the claim under § 1962(a).

[8] Section 1964(c) provides in relevant part that:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of

-12-

to recover based on a defendant's violation of § 1962(a), a plaintiff must show that his or her injury was caused by the defendant's use or investment of racketeering proceeds.  <u>See</u> <u>Compagnie De Reassurance</u>, 57 F.3d at 91 (citing 18 U.S.C. §§ 1962(a), 1964(c)).  Because this "use or investment injury" must be distinct from any injury caused by the predicate acts of racketeering, a plaintiff cannot comply with the "investment use rule" simply by "repeat[ing] the crux of [his or her] allegations in regard to the pattern of racketeering."  <u>Id.</u> at 91-92 (quoting <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1188 (3d Cir. 1993)) (alterations added and internal quotation marks omitted).

Even when read in the most favorable light, plaintiffs' complaint fails to identify any distinct injury that flowed from the law firm defendants' use or investment of racketeering proceeds.  While the complaint recites the general language of § 1962(a), <u>see</u> Verified Compl. (Doc. #1) ¶ 37, in the absence of

---

the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c) (Supp. 1996).

-13-

any supporting factual allegations such a recitation is insufficient to satisfy the "investment use rule." Cf. Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 329 (6th Cir.) (determining that claim that merely "parrot[ed]" analogous requirement under § 1962(b) was a conclusion unsupported by factual allegations and thus insufficient to withstand a Rule 12(b)(6) motion), cert. denied, 120 S.Ct. 172 (1999). Plaintiffs' bald assertion that they were damaged as a direct and proximate result of the defendants' conduct, see Verified Compl. (Doc. #1) ¶ 94, which is similarly unsupported by factual allegations linking any injury suffered by plaintiffs with the law firm defendants' use or investment of racketeering proceeds, also fails to satisfy the "investment use" rule.

Plaintiffs' contention that the law firm defendants were involved in funding the so-called "enterprise entities," see id. ¶¶ 32, 33, 45, 46, 50, fails for several reasons to state an "use or investment injury." First, the complaint does not allege that

-14-

any funds purportedly invested by the law firm defendants in the enterprise entities were the proceeds of racketeering activities. Second, even assuming for purposes of analysis that plaintiffs could surmount this first obstacle, many courts have concluded that the mere reinvestment of racketeering proceeds in a corporate enterprise, with the result that the enterprise continues to engage in the predicate acts of racketeering, is insufficient to give rise to a "use or investment injury" that is distinct from the harm caused by the predicate acts. See, e.g., Fogie v. THORN Americas, Inc., 190 F.3d 889, 896 (8th Cir. 1999); Lightning Lube, 4 F.3d at 1188-89; Update Traffic Sys., Inc. v. Gould, 857 F. Supp. 274, 282-83 (E.D.N.Y. 1994); Gelb v. American Tel. & Tel. Co., 813 F. Supp. 1022, 1024-25 (S.D.N.Y. 1993).

Perhaps in recognition of these inadequacies, plaintiffs seek to bolster their § 1962(a) claim by including in their opposition brief additional allegations and evidentiary material. See Mem. in Opp'n to Mot. by Law Firm Defs. to Dismiss (Doc. #16) at 4-5 (citing Appendices D, E, and F). Even if I could consider

-15-

such allegations and evidence when evaluating a Rule 12(b)(6) motion, the allegations and evidence presented in plaintiffs' opposition brief merely support the contention that the law firm defendants received fees for professional services rendered to various "enterprise entities." See id. Therefore, even if I were to take the plaintiffs' new allegations and evidence into account, it would show only that the law firm defendants received racketeering proceeds, not that they used or invested such proceeds in a manner that caused plaintiffs to suffer a distinct injury.

Accordingly, because the plaintiffs have failed to plead that they suffered a distinct "use or investment injury," they have failed to state a viable claim based on § 1962(a).

2.  **Violation of § 1962(b)**

Plaintiffs also claim that the defendants are liable for violation of 18 U.S.C. § 1962(b), which makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or control of any

[RICO] enterprise." 18 U.S.C. § 1962(b) (1994). The First Circuit requires plaintiffs bringing a claim based on a violation of § 1962(b) to plead a separate "acquisition injury" analogous to the "use or investment injury" required by § 1962(a). See Compagnie De Reassurance, 57 F.3d at 92. In other words, plaintiffs are required to allege "that they were harmed by reason of [the defendant's] acquisition or maintenance of [an interest in or] control of an enterprise through a pattern of racketeering activity." Id. (alteration and emphasis added). It is not enough for plaintiffs to claim that they were injured as a result of the defendants' predicate acts of racketeering. See id.

Even when viewed in the most favorable light, plaintiffs' complaint cannot be reasonably construed to satisfy the "acquisition injury" requirement. Simply put, nowhere in their complaint do plaintiffs allege a distinct injury that stemmed from the law firm defendants' acquisition or maintenance of an interest in or control of any RICO enterprise. As noted

previously, the mere recitation of general statutory language without the support of factual allegations, see Verified Compl. (Doc. #1) ¶¶ 32, 33, 39, 94, is not enough to withstand a Rule 12(b)(6) motion.

Accordingly, plaintiffs' have failed to state a cognizable claim based on a violation of § 1962(b).[9]

### 3. **Violation of § 1962(c)**

The third and final part of plaintiffs' civil RICO claim rests upon the assertion that the defendants violated 18 U.S.C. § 1962(c). See Verified Compl. (Doc. #1) ¶ 40. Section 1962(c) provides in relevant part that "[i]t shall be unlawful for any person employed by or associated with any [RICO] enterprise . . .

---

[9] Because I find that plaintiffs' § 1962(b) claim must be dismissed for lack of standing due to their failure to allege a distinct "acquisition injury," I need not address the law firm defendants' argument that plaintiffs also failed to plead that the law firm defendants acquired or maintained an interest in or control of an enterprise. See Mem. in Supp. of Law Firm Defs.' Mot. to Dismiss (Doc. #8) at 3. Furthermore, I note that plaintiffs' failure to allege a pattern of racketeering activity, see infra, is as fatal to their claim under § 1962(b) as it is to the remainder of their civil RICO claim.

-18-

to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (1994). To be liable under § 1962(c), a person must (1) conduct or participate in the conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity. See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985); 18 U.S.C. § 1962(c). In addition, to have standing to bring a claim based on a violation of § 1962(c), a plaintiff must plead (and ultimately prove) that he or she suffered an injury to business or property as a result of the violation. See 18 U.S.C. § 1964(c); Sedima, 473 U.S. at 495-97; Camelio v. American Fed'n, 137 F.3d 666, 669-70 (1st Cir. 1998).

As noted previously, the law firm defendants challenge plaintiffs' standing to bring the civil RICO claim set forth in the complaint. See Mem. in Supp. of Law Firm Defs.' Mot. to Dismiss (Doc. #8) at 5-8. In addition, they argue that plaintiffs have not adequately pleaded that defendants engaged in a "pattern" of "racketeering activity," both of which are

-19-

essential elements of a § 1962(c) claim.  See id. at 3-5, 8-9.

a. **Standing**

Section 1964(c) imposes a standing requirement under which a plaintiff seeking civil remedies for a violation of § 1962(c) must establish that the defendant's racketeering activity caused injury to the plaintiff's business or property.  See 18 U.S.C. § 1964(c); Sedima, 473 U.S. at 495-97; Camelio, 137 F.3d at 669-70. More particularly, a plaintiff's standing to sue depends upon a finding that at least one of the defendant's predicate acts of racketeering was the proximate cause, as well as the but-for or factual cause, of the plaintiff's injury.  See Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 276 (1992); Camelio, 137 F.3d at 670.  The Supreme Court has indicated that some direct relationship between the injury claimed and the injurious conduct alleged is required to show proximate causation; if the connection is too remote, the standing requirement is not satisfied.  See Holmes, 503 U.S. at 268-69, 271-74.  The Court has also noted, however, that at the

pleading stage general factual allegations that the plaintiff suffered an injury as a result of the defendant's conduct may be sufficient to satisfy the standing requirement. See National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994).

Read in the most favorable light, plaintiffs' complaint provides two possible grounds for standing. First, plaintiffs allege that the law firm defendants advised and assisted Reginald Gaudette in claiming that his pension plan was "ERISA qualified" and thus should be excluded from his Chapter 7 bankruptcy estate. See Verified Compl. (Doc. #1) ¶¶ 76-90. Second, plaintiffs allege that the asset protection enterprise, as effectuated by various predicate acts of racketeering committed by the law firm defendants and other defendants, depleted the bankruptcy estate of R&R Associates and thereby impeded plaintiffs' ability to collect on debts owed to them. See id. ¶¶ 2, 3, 44, 48, 53, 63. I examine each of these grounds in turn.

The allegations concerning Reginald Gaudette's pension plan do not confer RICO standing on these plaintiffs. Because

-21-

Gaudette's effort to have his pension plan characterized as "ERISA qualified" was rejected by the bankruptcy court and by this court on appeal, see Gaudette v. Erricola, CV-99-354-B (D.N.H. February 28, 2000), plaintiffs could not have suffered any cognizable injury as a result of that effort.[10]  Accordingly, plaintiffs lack standing to bring a civil RICO action based on the allegations that the law firm defendants engaged in racketeering activity when providing Gaudette with assistance in this regard.  Because these allegations do not provide plaintiffs with a viable cause of action under the RICO statute, I do not give them any consideration in the remainder of my civil RICO

_____

[10]  That the bankruptcy court, and later this court, concluded that the pension plan in question was not "ERISA qualified" and therefore not exempt from Reginald Gaudette's bankruptcy estate, see Gaudette v. Erricola, CV-99-354-B (D.N.H. February 28, 2000), in no way supports an inference that the law firm defendants committed fraud or some other improper act in counseling Gaudette to make a claim to the contrary.  As the opinions rendered by the bankruptcy court and this court in Gaudette v. Erricola should make clear, the legal status of the pension plan presented a complex issue over which reasonable people acting in good faith could disagree.

-22-

analysis.[11]

Plaintiffs do have standing, however, based on the allegations that the defendants fraudulently conveyed and concealed assets and/or income that otherwise would have been part of the R&R Associates bankruptcy estate. Although the law on this issue is not uniform, there is at least some authority for the proposition that a creditor of a bankrupt entity has standing to bring a civil RICO claim against third parties when the creditor is the target of those parties' unlawful activity. See <u>Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.</u>, 140 F.3d 898, 908 (11th Cir. 1998) (citing <u>Bankers Trust Co. v. Rhoades</u>, 859 F.2d 1096, 1100-01 (2d Cir. 1988))[12];

_____

[11] In my reading of plaintiffs' complaint, all of the allegations concerning the Reginald Gaudette bankruptcy relate to the characterization of the pension plan. While paragraphs 76 and 77 of the complaint set forth more general allegations of wrongdoing, <u>see</u> Verified Compl. (Doc. #1) ¶¶ 76, 77, the only reasonable inference based on the totality of the allegations in the complaint is that the conduct referred to in these paragraphs relates to the characterization of Reginald Gaudette's pension plan.

[12] While the Second Circuit in <u>Bankers Trust</u> concluded that a creditor of a bankrupt entity has RICO standing based on

but see Dana Molded Prods., Inc. v. Brodner, 58 B.R. 576, 579-80 (N.D. Ill. 1986) (holding that plaintiff, a creditor of bankrupt corporation, lacked standing to bring a civil RICO action based on fraudulent transfer of corporation's assets because injury asserted by plaintiff derived from, and was indistinguishable from, injury to corporation); cf. Fisher v. Apostolou, 155 F.3d 876, 881 (7th Cir. 1998) (suggesting that a RICO plaintiff's standing depends on showing that he or she suffered an injury separate and distinct from the injury to the bankrupt corporation and/or other creditors).

In the present case, plaintiffs identify themselves as "holders of claims, judgments, attachments, and causes of action against Louise L. Gaudette, Reginald L. Gaudette, The Resource

---

allegations of the fraudulent transfer of the entity's assets, the court also found it "impossible to determine the amount of damages that would be necessary to make plaintiff whole, because it [was] not known whether some or all of the fraudulently transferred funds [would] be recovered by the corporation. . . . As a result, [the court reasoned that] the damages in this area [were] 'speculative' and 'unprovable' . . . ." 859 F.2d at 1106. Accordingly, even though it had found that the plaintiff had standing, the Second Circuit dismissed the RICO claim without prejudice. See id.

Clinic, Inc., OFS Lending, Inc., J & L Family Limited Partnership III, Louis L. Gaudette Family Limited Partnership II, Gaudette Pension Associates Plan and Trust, and OFS Pension Plan." Verified Compl. (Doc. #1) ¶ 2 (footnote omitted). Although only one of the plaintiff corporations, GER Recovery, clearly asserts any direct claim against R&R Associates, see id. ¶ 63 (describing GER Recovery as "a successor-in-interest and present titleholder of a claim in the R&R Bankruptcy"), the complaint generally suggests that all three plaintiffs are creditors of the R&R Associates bankruptcy estate and that they were the targets of the defendants' unlawful activity. See id. ¶ 48 ("The transfers by the Gaudettes were fraudulent as to the plaintiffs herein and other creditors of the R&R Bankruptcy . . . ."). While plaintiffs' unaccountable failure to specify the particular mechanism by which R&R Associates became indebted to them makes an analysis of standing difficult, I resolve this issue by inferring that all three plaintiffs are creditors of R&R Associates. I note, however, that plaintiffs have standing only

to the extent that they are creditors of R&R Associates, as distinguished from merely having causes of action or other claims against R&R Associates that have not yet been reduced to judgment. In other words, if the only injury that plaintiffs suffered as a result of the asset protection enterprise was that they will be less likely to recover in the event that they win some future judgment against R&R Associates, plaintiffs lack standing to bring a civil RICO claim against the defendants. See Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990).

Accordingly, it is only by construing the complaint as alleging that plaintiffs are presently creditors of R&R Associates that I conclude that they have standing to bring a civil RICO claim against the law firm defendants. Having concluded that plaintiffs have pleaded sufficient facts to establish standing, I next address the law firm defendants' contention that the complaint does not adequately allege a pattern of racketeering activity.

b.  **Racketeering Activity**

To be liable for a violation of § 1962(c), a defendant must engage in two or more of the predicate acts of racketeering enumerated in 18 U.S.C. § 1961(1).  See Miranda v. Ponce Fed. Bank, 948 F.2d 41, 45 (1st Cir. 1991); Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991).  The law firm defendants dispute whether plaintiffs have adequately alleged even a single predicate act of racketeering.  See Mem. in Supp. of Law Firm Defs.' Mot. to Dismiss (Doc. #8) at 8.  Read in the most favorable light, plaintiffs' complaint identifies four potential forms of racketeering activity: (1) mail fraud in violation of 18 U.S.C. § 1341, see Verified Compl. (Doc. #1) ¶¶ 1, 36, 49, 72, 83; (2) bankruptcy fraud in violation of 18 U.S.C. §§ 152 and/or 157, see id. ¶¶ 1, 32, 33, 38, 42, 44-73, 96-97; (3) money laundering in violation of 18 U.S.C. §§ 1956 and 1957, see id. ¶ 1, 41; and (4) witness tampering in violation of 18

U.S.C. § 1512, see id. ¶¶ 1, 38, 86-92.[13]  For the following

reasons, however, I determine that all of these allegations, with

the exception of those concerning bankruptcy fraud, fail to state

predicate acts of racketeering.

### i.   Mail Fraud

It is well established in the First Circuit that predicate

acts of mail fraud alleged in civil RICO actions must be pleaded

with particularity in accordance with the dictates of Rule 9(b)

of the Federal Rules of Civil Procedure.  See Ahmed v.

---

[13]  Plaintiffs allude to several other offenses, e.g., conspiracy in violation of 18 U.S.C. §371 and obstruction of a court order in violation of 18 U.S.C. § 1509.  See Verified Compl. (Doc. #1) ¶ 1.  Because these offenses are not included within the statutory definition of "racketeering activity," see 18 U.S.C. § 1961(1), they cannot constitute predicate acts. Plaintiffs also allege that "[t]he Law Firm and other Defendants used wire transactions to further the enterprise."  See Verified Compl. (Doc. #1) ¶ 93.  Because this general avowal is not supported by any factual allegations identifying any wire transactions, it does not state a predicate act.  Moreover, the legal insufficiency identified in the text with respect to plaintiffs' mail fraud allegations would similarly apply to plaintiffs' conclusory allegation of wire fraud.  See New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987) (holding that Rule 9(b) applies to alleged predicate acts of mail and wire fraud).

Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997) (citing Feinstein, 942 F.2d at 42; New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987)), cert. denied, 522 U.S. 1148 (1998). Under the First Circuit's interpretation of Rule 9(b)'s particularity requirement, a civil RICO plaintiff alleging predicate acts of mail fraud must specify the time, place, and content of allegedly false mail communications. See Ahmed, 118 F.3d at 889; Doyle v. Hasbro, 103 F.3d 186, 194 (1st Cir. 1996); Becher, 829 F.2d at 288, 290.

Each of the mailings identified in plaintiffs' complaint fails to meet this particularity requirement. In paragraph 72, plaintiffs allege that certain "financial statements upon the direction of the Law [F]irm and Accounting Firm and in furtherance of the enterprise, were submitted via the U.S. mail to the Federal Deposit Insurance Corp. (FDIC), a creditor of the Gaudettes for the purpose of inducing reliance thereon by the FDIC to gain a favorable settlement of any claim lawfully due from the defendants to the FDIC." Verified Compl. (Doc. #1) ¶

72. Although plaintiffs assert that the financial statements sent to the FDIC were "false [and] misleading," see id. ¶ 73, and that the defendants reviewed and revised the statements on or about May 8, 1992, see id. ¶ 71, nowhere in the complaint do they identify when the financial statements were mailed, the location from which they were mailed, or the specific representations in the statements that were false or misleading.

The other relevant allegations of mail fraud relate to the formation of certain limited partnerships through which assets and/or income of the Gaudettes were purportedly concealed.[14] Paragraph 49 states in relevant part that "[t]he Certificate of Limited Partnership signed by Gaudette was forwarded through the U.S. mail by the Law Firm Defendants to and filed by the New

---

[14] The mailings alleged in paragraphs 83 and 85 of the complaint relate to defendants' efforts to have Reginald Gaudette's pension plan characterized as "ERISA qualified" and thus exempt from his Chapter 7 bankruptcy estate. See Verified Compl. (Doc. #1) ¶¶ 83, 85. As noted previously, plaintiffs lack standing to sue based on these allegations because they suffered no cognizable injury as a result of Gaudette's unsuccessful attempt to have the pension plan excluded. I also note that these allegations, like the others discussed in the text, fail to satisfy the particularity requirement.

Hampshire Secretary of State on May 9, 19991 [sic]." Id. ¶ 49.

Paragraph 46 asserts that "[t]he limited partnerships were formed and funded, directly or indirectly, by the Law Firm and Accounting Firm Defendants and others through the use of the United States mail system in furtherance of the enterprise." Id. ¶ 46. Although the first of these allegations provides some information as to time and place, both allegations completely fail to specify the content of any misrepresentations.

Because plaintiffs' allegations of mail fraud are not pleaded with particularity, the complaint as currently presented fails to state any predicate acts of mail fraud.

The First Circuit has devised a special approach for civil RICO cases in which alleged predicate acts of mail and/or wire fraud fail to meet the standard required under Rule 9(b). In such cases, "a district court should make a second determination as to whether further discovery is warranted and, if so, the plaintiff should be provided with the opportunity to amend the complaint after the completion of this discovery." Ahmed, 118

F.3d at 890 (citing Becher, 829 F.2d at 290); see also Feinstein, 942 F.2d at 43.  A plaintiff is not, however, automatically entitled to such discovery and opportunity to amend.  See Ahmed, 118 F.3d at 890; Feinstein, 942 F.2d at 44.  For example, when a plaintiff "fail[s] to supply specific allegations which would indicate that critical information was in the sole possession of the defendants," he or she may not be entitled to discovery or the opportunity to amend.  See Ahmed, 118 F.3d at 890.  Moreover, the First Circuit has stated that "[i]n a RICO action where fraud has not been pleaded against a given respondent with the requisite specificity and Rule 9(b) has been flouted, dismissal should follow as to that respondent unless the plaintiff, at a bare minimum, suggests to the district court, in a timely manner, that a limited period of discovery will likely allow him to plug the holes in the complaint and requests leave (i) to conduct discovery for this limited purpose and (ii) thereafter to amend his complaint.  It is only then that a district court must take a second look to ascertain whether a particular case is

'appropriate' for the special unguent of deferral." <u>Feinstein</u>, 942 F.2d at 44 (internal citation omitted).

Plaintiffs have not requested leave to conduct limited discovery regarding the alleged mailings or to amend their complaint to specify the time, place, and content of the alleged fraudulent representations. Neither have plaintiffs pleaded specific facts from which I could reasonably conclude that information regarding the time, place, and content of such misrepresentations are in the exclusive possession of the defendants. To the contrary, the attestation appended to plaintiffs' complaint asserts that plaintiffs have already discovered and reviewed "over twenty-five thousand (25,000) pages of business, real estate, mortgages, pension plan and tax documents produced . . . by Gaudette and the Gaudette Entities." Verified Compl. (Doc. #1), Verification of James J. Lyons, Jr. ¶ 7. Because plaintiffs have been unable to plead predicate acts of mail fraud with the requisite specificity even with the benefit of such a wealth of discovery material, any additional

discovery on the issue would be futile.  Moreover, I reject the
suggestion, made by plaintiffs in their opposition brief, <u>see</u>
Mem. in Opp'n to Mot. by Law Firm Defs. to Dismiss (Doc. #16) at
4, that they are excused from the requirement that predicate acts
of mail fraud be pleaded with particularity because the trustee
of Reginald Gaudette's Chapter 7 bankruptcy estate previously
brought similar allegations against the same defendants.[15]

Accordingly, because plaintiffs have failed to plead mail
fraud with particularity, they have not alleged any viable
predicate acts of mail fraud.  Further, plaintiffs are not
entitled to an opportunity to conduct limited discovery or amend
their complaint to remedy this failing.

### ii.  Bankruptcy Fraud

Plaintiffs allege that the law firm defendants, in

---

[15]  Plaintiffs may not cure deficiencies in their complaint
by appending evidentiary material to their opposition brief.
Accordingly, when determining whether plaintiffs have pleaded the
predicate acts of mail fraud with particularity in the present
action, I do not consider the pleadings from other proceedings
that plaintiffs have appended to their opposition brief.  <u>See</u>
Mem. in Opp'n to Mot. by Law Firm Defs. to Dismiss (Doc. #16) at
4 (referring to appendices A, B, and C).

conjunction with other defendants, committed various acts of fraud in connection with the Chapter 11 bankruptcy proceedings of R&R Associates. See Verified Compl. (Doc. #1) ¶¶ 1, 32-33, 42, 44-73, 96-97. Although it appears that certain forms of bankruptcy fraud are excluded from the statutory definition of "racketeering activity,"[16] I assume for purposes of analysis that plaintiffs' complaint states at least two predicate acts of bankruptcy fraud.

_____

[16] Congress added § 157, captioned "bankruptcy fraud," to Title 18 of the U.S. Code in 1994. See 18 U.S.C. § 157 (1994). At the same time, Congress expressly exempted from the statutory definition of "racketeering activity" "a case under section 157 of that [subsequently amended to "this"] title." 18 U.S.C. § 1961(1)(D) (1994 & Supp. 1996). As a result, § 1961(1)(D) as currently in force includes within its list of racketeering activities "any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title)." Id. (emphasis added). While many of the allegations in the complaint appear to fall within the scope of § 157 and the complaint both refers to and tracks the language of that section, see Verified Compl. (Doc. #1) ¶¶ 1, 73, 96, and unnumbered paragraph at 14, I assume for purposes of analysis that plaintiffs have pleaded at least two predicate acts of bankruptcy fraud that fall outside of the statutory exemption. This assumption is consistent with plaintiffs' intention to plead non-exempted acts of bankruptcy fraud in violation of 18 U.S.C. § 152 in support of their civil RICO claim. See id. ¶¶ 1, 42, 97; Mem. in Opp'n to Mot. by Law Firm Defs. to Dismiss (Doc. #16) at 2.

### iii. Witness Tampering

Plaintiffs also allege that the law firm defendants improperly influenced the testimony of an expert witness in the Reginald Gaudette bankruptcy proceedings. See Verified Compl. (Doc. #1) ¶¶ 86-90. Even assuming for purposes of analysis that such allegations state a violation of 18 U.S.C. § 1512, I have already determined that plaintiffs lack standing to bring a civil RICO action in relation to this episode. Accordingly, the allegations of witness tampering cannot constitute "racketeering activity" in support of their claim.

### iv. Money Laundering

Finally, plaintiffs allude to a predicate act or acts of money laundering in violation of 18 U.S.C. §§ 1956 and/or 1957. See Verified Compl. (Doc. #1) ¶¶ 1, 41. However, because their money laundering claim is purely conclusory and unsupported by any factual allegations, plaintiffs have not adequately pleaded money laundering as a predicate act.

In sum, plaintiffs' complaint does not adequately allege

predicate acts of mail fraud, witness tampering, or money laundering. I assume for purposes of analysis, however, that the complaint does allege multiple predicate acts of bankruptcy fraud. Accordingly, I must consider whether those acts of bankruptcy fraud constitute a "pattern" as required to state a violation of § 1962(c).

### c.  **Pattern**

To recover based on a defendant's violation of § 1962(c), a plaintiff must show that the defendant engaged in a "pattern" of racketeering activity. See 18 U.S.C. § 1962(c); Sedima, 473 U.S. at 496. Although I have assumed for purposes of analysis that the complaint alleges at least two predicate acts of bankruptcy fraud, it is impossible to conclude that those acts formed a "pattern" as that term has been defined by Congress and the courts.

According to the RICO statute, a pattern of racketeering activity "requires at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the

commission of a prior act of racketeering activity."  18 U.S.C. §
1961(5) (1994).  While two predicate acts of racketeering are
necessary to satisfy the pattern requirement, they are not in
themselves sufficient.  See H.J. Inc. v. Northwest Bell Tel. Co.,
492 U.S. 229, 237 (1989); Feinstein v. Resolution Trust Corp.,
942 F.2d 34, 44 (1st Cir. 1991).  The Supreme Court and the First
Circuit have explained that in addition to a minimum of two
predicate acts, a plaintiff seeking to demonstrate a pattern of
racketeering activity "must show that the racketeering predicates
are related ["the relatedness requirement"], and that they amount
to or pose a threat of continued criminal activity ["the
continuity requirement"]."  H.J. Inc., 492 U.S. at 239; see also
Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997), cert.
denied, 522 U.S. 1148 (1998); Schultz v. Rhode Island Hosp. Trust
Nat'l Bank, N.A., 94 F.3d 721, 731 (1st Cir. 1996).  Racketeering
activities do not constitute a pattern if they are "sporadic" or
"widely separated and isolated" occurrences.  H.J. Inc., 492 U.S.
at 239 (internal quotation marks omitted); see also Feinstein,

942 F.2d at 46.

The relatedness requirement is not difficult for a plaintiff to satisfy.  See Libertad v. Welch, 53 F.3d 428, 444 (1st Cir. 1995) ("[T]he relatedness test is not a cumbersome one for a RICO plaintiff.") (quoting Feinstein, 942 F.2d at 44) (internal quotation marks omitted).  Predicate acts of racketeering are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  H.J. Inc., 492 U.S. at 240 (internal quotation marks omitted); see also Ahmed, 118 F.3d at 889.  Plaintiffs' allegations of bankruptcy fraud meet this standard because all of the alleged acts shared the same basic purpose (e.g., to conceal assets and/or income from the bankruptcy court and from creditors of R&R Associates), the same or similar participants (e.g., the law firm defendants, the accounting firm defendants, and/or members of the Gaudette family), and the same victims (e.g., the bankruptcy estate and creditors of R&R Associates).  Accordingly,

the predicate acts pleaded by plaintiffs are sufficiently related.

Plaintiffs are less successful, however, in meeting the continuity requirement. A plaintiff may satisfy the continuity requirement in one of two ways: either (1) by showing that the predicate acts amount to continuing racketeering activity; or (2) by showing that the predicate acts constitute a threat of continuing racketeering activity in the future. See H.J. Inc., 492 U.S. at 240-42; Ahmed, 118 F.3d at 889; Libertad, 53 F.3d at 445. To establish continuity by the first method, a plaintiff must establish that the predicate acts extended over "a substantial period of time." H.J. Inc., 492 U.S. at 242; see also Feinstein, 942 F.2d at 45. A period of several or more years may be "substantial"; a period of several weeks or months is clearly insufficient. See H.J. Inc., 492 U.S. at 250; Libertad, 53 F.3d at 445; Feinstein, 942 F.2d at 45; Fleet Credit Corp. v. Sion, 893 F.2d 441, 447 (1st Cir. 1990). To establish continuity by the second method, a plaintiff must show that while

the predicate acts were committed over a relatively short period of time, there is a realistic possibility that they will continue to occur in the future.  See H.J. Inc., 491 U.S. at 242; Libertad, 53 F.3d at 445; Fleet, 893 F.2d at 447.

As in other respects, plaintiffs' complaint is not a model of clarity and specificity when it comes to alleging when and how often the alleged acts of bankruptcy fraud were committed.  It is possible, however, to glean from the complaint a rough sense of the time period during which the alleged acts occurred.  The earliest specific date identified by plaintiffs is December 1990, when the law firm defendants allegedly made misrepresentations in furtherance of the enterprise to the Hillsborough County Superior Court.  See Verified Compl. (Doc. #1) ¶ 51.  According to plaintiffs, the law firm defendants had already "initiated the fraudulent transfer of Gaudette assets prior to December . . . 1990."  Id. ¶ 52.  Plaintiffs allege that several months later, on or about February 26, 1991, "the Law Firm Defendants discussed with the Gaudettes a 'bankruptcy filing to strike preferential

attachment.'"  Id. ¶ 54.  In April, 1991, the law firm defendants began to assist R&R Associates in its Chapter 11 bankruptcy proceeding.  Specifically, plaintiffs assert that the law firm defendants filed the bankruptcy petition, helped to prepare bankruptcy schedules, and sought appointment as counsel to R&R Associates.  See id. ¶¶ 57, 59, 64-67.

The time frame delineated in the complaint then jumps forward approximately one year to May 1992, when the law firm and accounting firm defendants allegedly met with the Gaudettes for the purpose of reviewing and revising false and misleading financial statements.  See id. ¶ 71, 73.  These financial statements were allegedly submitted to the FDIC "in furtherance of the enterprise."  Id. ¶ 72.

Read generously, the predicate acts of bankruptcy fraud alleged in the complaint revolve around two main transactions: (1) the fraudulent concealment of assets and/or income during 1990 and 1991; and (2) the preparation in May 1992 of the false financial statements subsequently mailed to the FDIC.  Assuming

-42-

that all of these acts give rise to separate offenses and were sufficiently related to one another,[17] the crucial question is whether these acts satisfy the continuity requirement.  Even if the length of time involved -- from sometime before December 1990 to May 1992, or approximately one-and-a-half years -- was sufficient to satisfy the requirement of a "substantial" period, see, e.g., H.J. Inc., 492 U.S. at 250 (concluding that period of at least six years was sufficient); Fleet, 893 F.2d at 447 (finding period of four-and-a-half years sufficient), the plaintiffs have failed to allege that the acts occurred with regular frequency during that period.  Accordingly, I conclude that the acts as alleged are too "sporadic" to satisfy the continuity requirement by the first method.  Compare H.J. Inc.,

---

[17]  The complaint does not clearly identify a relationship between the preparation and mailing of financial statements submitted to the FDIC and the other acts committed in furtherance of the alleged asset protection enterprise during the 1990-1991 period.  However, because plaintiffs assert that the financial statements were mailed to the FDIC "in furtherance of the enterprise," see Verified Compl. (Doc. #1) ¶ 72, I assume that they were sufficiently related to the acts committed in 1990 and 1991.

492 U.S. at 250 (finding that racketeering activities that "occurred with some frequency over at least a 6-year period," were sufficient); Fleet, 893 F.2d at 447 (finding that 95 fraudulent mailings over a four-and-a-half year period satisfied the continuity requirement); Zee-Bar, Inc.-N.H. v. Kaplan, 792 F. Supp. 895, 907 (D.N.H. 1992) (concluding that a series of acts committed "on a regular basis" over "a twenty-three-month period" was sufficient "to suggest 'long-term criminal conduct'"), with Lincoln House, Inc. v. Dupre, 903 F.2d 845, 846-47 (1st Cir. 1990) (suggesting in dictum that six acts of mail fraud over 26 months were too sporadic to satisfy continuity requirement).

Plaintiffs' complaint similarly fails to allege facts from which I could reasonably infer the existence of an open-ended threat that defendants will continue to commit related acts of bankruptcy fraud in the future. In fact, the complaint does not allege any acts of fraud in connection with the R&R Associates bankruptcy any time after May 1992.

Accordingly, because plaintiffs have failed to satisfy the

continuity requirement, they have not adequately alleged a "pattern" of racketeering activity. This failure is fatal to their § 1962(c) claim.

## IV.

For the foregoing reasons, plaintiffs have failed to state a civil RICO claim against the law firm defendants. Plaintiffs claims based on alleged violations of 18 U.S.C. §§ 1962(a) and (b) fail for lack of standing. While plaintiffs have standing to bring a claim based on § 1962(c), this claim fails because the viable predicate acts pleaded by plaintiffs do not establish a pattern of racketeering activity. Accordingly, the law firm defendants' motion to dismiss (Doc. #8) is granted as to plaintiffs' civil RICO claim (Count I). Moreover, because plaintiffs have conceded that they have no separate cause of action under 18 U.S.C. § 152, the law firm defendants' motion is also granted as to Count II.

Although I dismiss Counts I and II only as alleged against the law firm defendants, I note that the analysis set forth in

this memorandum and order would seem to apply equally well to the other defendants in this action. Accordingly, I will similarly dismiss the civil RICO and bankruptcy fraud claims against those defendants unless plaintiffs file a motion and supporting memorandum opposing such dismissal on or before September 15, 2000.

Finally, because of the possibility that the federal claims against all defendants in this action will be dismissed, I defer ruling on the merits of the state-law civil conspiracy and consumer protection claims (Counts III and IV) and therefore deny the motion to dismiss these claims without prejudice. In the event that all federal claims against all defendants are dismissed, I will decline to exercise supplemental jurisdiction over those state-law claims.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

July 29, 2000

cc:   Michael Atkins, Esq.
      Ronald Caron, Esq.
      Rodney Stark, Esq.
      Robert Daniszewski, Esq.
      David Carr, Esq.