Jennifer HOULT, Plaintiff–Appellee,

v.

David P. HOULT, Defendant–Appellant.

No. 94–2034.

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 1995.

Decided May 22, 1995.

**2**

Edward J. Collins, Wayland, MA, for appellant.

Kevin P. O'Flaherty, with whom Adrienne M. Markham and Goulston & Storrs, Boston, MA, were on brief, for appellee.

Before TORRUELLA, Chief Judge, ALDRICH, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Chief Judge.

Plaintiff-appellee, Jennifer Hoult, brought suit against her father, defendant-appellant, David Hoult, in the United States District Court for Massachusetts alleging, *inter alia,* assault and battery, and intentional infliction of emotional distress. A jury returned a verdict in the amount of $500,000 for plaintiff. Defendant filed timely appeals—first, of the denial of his motion for a mistrial and, second, of the jury verdict—both of which were ultimately dismissed by this court for lack of prosecution. One year after judgment issued, defendant filed a motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Defendant appeals the district court's denial of that motion. For the reasons stated herein, we affirm.

## BACKGROUND

Plaintiff commenced this action in July 1988 alleging, among other things, that from the time she was approximately four years old until she was approximately sixteen years old defendant sexually abused and threat-

ened her. Plaintiff alleged that she had repressed all memory of the abuse until she began to recapture those memories during therapy sessions in October 1985, when she was twenty-four.

On February 2, 1993, the parties presented the case at a summary jury trial. Counsel for both parties outlined for the summary jury the evidence they expected to present at trial. The presentation by plaintiff's counsel included a summary of the expected testimony of, among others, the plaintiff, her former therapist, Eileen Jacobsen ("Jacobsen"), and her examining psychiatrist, Dr. Renee Brant ("Dr. Brant"). Defense counsel presented no expert testimony, relying instead on defendant's general denial of the charges and a refutation of the testimony of Jacobsen and Dr. Brant. Defendant prevailed on the merits at the summary jury trial.

On June 24, 1993, the case went to trial. It was tried for eight days. Both Dr. Brant and Jacobsen testified for the plaintiff. On July 1, 1993, the jury returned a verdict in favor of the plaintiff in the amount of $500,-000. On July 14, 1993, the district court entered judgment in the case. Defendant moved for a new trial, and that motion was denied in August 1993. Defendant appealed both the denial of his motion for a new trial and the judgment. Both appeals were ultimately dismissed by this court for lack of prosecution.

On July 14, 1994, exactly one year from the date of judgment, defendant, through new counsel, filed a motion to vacate the judgment. The district court denied the motion to vacate in a detailed opinion delivered from the bench at the conclusion of a hearing on defendant's motion. This appeal followed.

## DISCUSSION

▮ Defendant asserts essentially four grounds for relief from judgment under Rule 60(b).[1] We address each of these arguments seriatim below. We note at the outset that district courts enjoy broad discretion in deciding motions brought under Rule 60(b), and we review such rulings only for abuse of that discretion. *See Cotto v. United States*, 993 F.2d 274, 277 (1st Cir.1993); *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 19 (1st Cir.1992). In addition, our review is limited to the denial of the motion itself. We may not consider the merits of the underlying judgment. *Ojeda–Toro v. Rivera–Méndez*, 853 F.2d 25, 28 (1st Cir. 1988). Finally, we note that "Rule 60(b)(6) may not be used as a back-door substitute for an omitted appeal, and, in all but the most exceptional circumstances, a party's neglect to prosecute a timeous appeal will bar relief under the rule." *Cotto*, 993 F.2d at 278.

## I.

Defendant's primary contention is that the trial judge erred in allowing plaintiff's expert witness, Dr. Brant, to testify with respect to the phenomenon of repressed memory in the context of childhood sexual abuse. Defendant contends that this constitutes "mistake, inadvertence, surprise, or excusable neglect" within the meaning of Rule 60(b)(1).

With respect to her qualifications as an expert in the areas of general psychiatry, child psychiatry, and childhood sexual abuse, Dr. Brant testified that she: is a graduate of the Harvard Medical School; has a private psychiatric practice; was a founder of the sexual abuse unit at Children's Hospital; holds a joint appointment as an instructor of medical students at Children's Hospital and Harvard Medical School; serves as a consultant on the treatment of children who have

---

1. Rule 60(b) provides, in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denom-

inated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

been sexually abused; has lectured widely on the issue of the treatment and diagnosis of children who have suffered sexual abuse; and has served as an expert witness in several other actions.

Dr. Brant testified generally at trial with respect to the psychological dynamics and clinical profiles of victims of childhood sexual abuse, and also about the phenomenon of repressed memory of traumatic events. She further testified that, based on her clinical evaluation of the plaintiff, there "was a lot of correlation" between the plaintiff's "clinical presentation" and the clinical profile of a childhood sexual abuse victim.

At no time before or during either the summary jury trial or the actual jury trial did defendant object to either Dr. Brant's qualifications as an expert witness or her testimony in general. Nor did defendant present any expert testimony of his own. Instead, defense counsel vigorously cross-examined Dr. Brant, regarding both her theories and techniques in general, and her application of those theories and techniques to her evaluation of the plaintiff. Defense counsel also challenged Dr. Brant's testimony with specific articles and studies by academics and other mental health professionals. The defendant was the only witness to testify for the defense. The defense used essentially the same strategy at trial that it successfully used at the summary jury trial.

■ Rule 103(a) of the Federal Rules of Evidence provides that a claim of error may not be predicated on the admission of evidence unless it affects a substantial right of the party *and* a timely objection is made. Defendant nonetheless argues that the Supreme Court's recent decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), requires the district court to make a *sua sponte* ruling on the admissibility of expert testimony. Defendant bases this argument on the following language from *Daubert:*

> [U]nder the [Federal Rules of Evidence], the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.
>
> The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert must testify. . . . The subject of an expert's testimony must be "scientific . . . knowledge." The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. . . . In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability. . . .
>
> .    .    .    .    .
>
> Faced with a proffer of expert testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to . . . scientific knowledge. . . .

*Daubert,* —— U.S. at ——, 113 S.Ct. at 2795.[2]

The district court rejected defendant's interpretation of *Daubert,* primarily because it is inconsistent with Rule 103(a). The position of the district court is consistent with the one federal appeals court decision we found addressing this issue. *See McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1407 (8th Cir.1994).

■ Although we agree with the result reached by the district court, we take a somewhat different view of *Daubert.* We think *Daubert* does instruct district courts to conduct a preliminary assessment of the reliability of expert testimony, even in the absence of an objection. We do not think,

---

**2.** Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Rule 104(a) provides: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b) [pertaining to conditional admissions]. In making its determination it is not bound by the rules of evidence except those with respect to privileges."

however, that district courts are required, *sua sponte*, to make explicit on-the-record rulings regarding the admissibility of expert testimony. The reasoning of the Second Circuit in a somewhat analogous case is instructive in this regard.

The two defendants in *United States v. Locascio*, 6 F.3d 924 (2d Cir.1993), argued that a district court admitting expert testimony based on inadmissible evidence pursuant to Rule 703 of the Federal Rules of Civil Procedure must make an explicit finding with regard to the trustworthiness of the underlying sources of information upon which the expert relied. The court rejected this argument, stating:

> We decline, however, to shackle the district court with a mandatory and explicit trustworthiness analysis. The district judge, who has the ideal vantage point to evaluate an expert's testimony during trial, already has the authority under Fed. R.Evid. 403 to conduct an explicit trustworthiness analysis should she deem one necessary. In fact, we assume that the district court consistently and continually performed a trustworthiness analysis *sub silentio* of all evidence introduced at trial. We will not, however, circumscribe this discretion by burdening the court with the necessity of making an explicit determination for all expert testimony.

*Locascio*, 6 F.3d at 939 (citations omitted).

We think *Daubert* and Rule 104(a) place some burden on the district court judge to make preliminary evaluations with respect to the reliability of evidence, but we decline to "shackle the district court with a mandatory and explicit" reliability analysis. Rather, we assume that the district court performs such an analysis *sub silentio* throughout the trial with respect to all expert testimony.

In any case, we need not at this time determine the precise contours of the district court's responsibility under *Daubert*. The gravamen of defendant's argument is that the district court wrongly decided a point of law. This is not grounds for relief under Rule 60(b). *See Silk v. Sandoval*, 435 F.2d 1266, 1267–68 (1st Cir.), *cert. denied*, 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (1971). *See also Rodriguez–Antuna v. Chase Manhattan Bank Corp.*, 871 F.2d 1, 2 (1st Cir.1989). We conclude that the district court's admission of the expert testimony, even if error—as to which we express no opinion—was not a "mistake," as we have defined that term under Rule 60(b)(1). *See Silk*, 435 F.2d at 1267–68. *See also Rodriguez–Antuna*, 871 F.2d at 2; *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 153–54 (1st Cir.1980).

Defendant also asserts, in a similar vein, that Local Rule 26.4(A) of the United States District Court for the District of Massachusetts requires the trial judge to make a *sua sponte* ruling on the admissibility of expert testimony. This argument lacks merit. Local Rule 26.4(A) provides that, "[a]t the final pretrial conference, the judge shall consider: … making a ruling on the admissibility of expert testimony at the trial." The plain language of this rule merely requires the district court to *consider* making a ruling on the admissibility of expert testimony; it does not require the court to make such a ruling.[3]

## II.

Defendant's second contention is that an article entitled *The Reality of Repressed Memories*, by Elizabeth Loftus, which was published one month before trial, constitutes "newly discovered evidence" within the meaning of Rule 60(b)(2). Rule 60(b)(2) gives the district court discretion to vacate a

---

**3.** Defendant also asserts that his trial counsel's decision not to present expert testimony in his case-in-chief, or object to the testimony of Dr. Brant, was a "mistake" or "inexcusable neglect" within the meaning of Rule 60(b)(1). We have repeatedly held that "the acts and omissions of counsel are customarily visited upon the client in a civil case." *Cotto*, 993 F.2d at 281 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962)); *see also United States v. One Lot $25,721.00 in Currency,* 938 F.2d 1417, 1421 (1st Cir.1991); *Ojeda–Toro*, 853 F.2d at 30. The principle carries particular force in this case because the very defense strategy defendant now objects to was used successfully by defense counsel at the summary jury trial. Thus, not only was defendant fully aware of his counsel's strategy, but presumably he was satisfied with the result at the summary jury trial. We find no justification for departing from the general rule that a defendant is bound by the acts and omissions of his attorney.

judgment based upon "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." The article critically examines and questions the reliability of repressed memories, particularly in the context of childhood sexual abuse allegations. Defendant maintains that the article could have been used at trial to challenge the testimony of Dr. Brant.

■ Defendant's motion to vacate the judgment under Rule 60(b)(2) fails. Because Rule 60(b)(2) is aimed at correcting erroneous judgments based on the unobtainability of evidence, the burden is on the party presenting the new evidence to demonstrate that the missing evidence was " 'of such a material and controlling nature as [would] probably [have] change[d] the outcome.' " *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 n. 10 (1st Cir.1988) (quoting 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.23[4] at 60:201–02 (2d ed.1985) (footnote omitted)); *see also Federal Deposit Ins. Corp. v. La Rambla Shopping Cntr.*, 791 F.2d 215, 223–24 (1st Cir.1986); *Bradley Bank v. Hartford Accident & Indem. Co.*, 737 F.2d 657, 662 (7th Cir.1984). Defendant has failed to demonstrate that the opinions expressed in the pertinent article would probably have changed the outcome of the trial. Indeed, the article is equivocal when it comes to the validity of repressed memories.[4] Its central thesis is simply that more research needs to be done and therapists need to be more cognizant of the possibility that they are "suggesting" childhood sexual abuse. This is hardly the sort of extraordinary "new evidence" contemplated by Rule 60(b)(2).

### III.

■ Defendant next contends that the judgment in this case is "void" within the meaning of Rule 60(b)(4). We have explained that "[a] judgment is void, and therefore subject to relief under Rule 60(b)(4), *only* if the court lacked jurisdiction *or* in circumstances in which the court's action amounts to a plain usurpation of power constituting a violation of due process." *United*

States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir.1990) (citation omitted). A judgment is not void simply because it is or may have been erroneous; it is void only if, from its inception, it was a legal nullity. *Id.* at 661; *Lubben v. Selective Serv. Sys. Local Board No.*, 453 F.2d 645, 649 (1st Cir.1972). "In the interests of finality, the concept of void judgments is narrowly construed." *Id.* at 661 (quoting *United States v. Berenguer*, 821 F.2d 19, 22 (1st Cir.1987)).

Defendant contends that Dr. Brant "usurped the function of the jury" by opining on the plaintiff's credibility. Defendant maintains that admission of this testimony at trial amounted to a violation of due process, and therefore that the judgment is void under Rule 60(b)(4).

Dr. Brant testified that one of the clinical factors involved in her evaluation of sexual abuse patients concerns the potential for fabrication—specifically, whether the patient indicates a motivation to fabricate the claims of sexual abuse. When asked whether she developed any opinion with respect to her evaluation of the plaintiff in conjunction with the fabrication factor, Dr. Brant testified, without objection, as follows:

So to the extent that her feelings about her father were so complex, I think in a situation of fabrication or false allegation what I might expect is someone who is angry, vengeful, wants to out and destroy someone, and this is the means they will use to do it. I didn't see that at all with Ms. Hoult. . . .

. . . I suppose one of the motivations when someone is involved in civil litigation, and you are looking for—to see money for damages—is that you try to build as big a case as you can about how much pain and suffering you are in. Well, here she was telling me about . . . many ways in which she was feeling much better. . . . So I thought about that and considered that in relationship to false allegation and fabrication. I felt there was less indication of that. . . .

---

4. For example, in her concluding remarks the author notes that "[d]espite lack of corrobora-

tion, some of these recollections could be authentic. Others might not be."

It is the function of the jury alone to evaluate the credibility of a witness. This principle carries particular importance in a case, such as this one, where the witness is the alleged victim and a party to the lawsuit. When an expert witness testifies with respect to the credibility of a victim/witness there is a real danger that jurors will lend too much credence to the expert's evaluation of the victim's credibility, at the expense of their own independent judgment of credibility. *See United States v. Rosales*, 19 F.3d 763, 766 (1st Cir.1994) ("proffered expert testimony [c]ould create a substantial danger of undue prejudice ... because of its aura of special reliability and trustworthiness") (quoting *United States v. Fosher*, 590 F.2d 381, 383 (1st Cir.1979)).

We addressed this issue recently. In *Rosales*, the defendant argued on appeal that a portion of the government's expert testimony should have been excluded because it improperly bolstered the testimony of the alleged sexual abuse victims. The expert testified that children generally "tend to be reluctant, they tend to be embarrassed, uncomfortable, ashamed of what happened. They're very uncomfortable giving details. I see a lot of that. And I saw that in these children." *Id.* at 765. We concluded that the expert testimony in question "sent an implicit message to the jury that the children had testified truthfully, and this might therefore have interfered with the jury's function as the sole assessor of witness credibility." We held, however, that even if the probative value of the evidence was substantially outweighed by the risk of unfair prejudice,[5] admission of the evidence was not "plain error."[6] *Id.* at 766.

We think Dr. Brant's testimony may have crossed the line in commenting upon the plaintiff's credibility. Dr. Brant did not limit her testimony to "psychological literature or experience or to a discussion of a

class of victims generally." *See United States v. Binder*, 769 F.2d 595, 602 (9th Cir.1985), *quoted in Rosales*, 19 F.3d at 765. Rather, she came perilously close to testifying that this particular victim/witness could be believed. *See id.* If defendant had properly objected to this testimony at trial, and appealed a decision admitting the testimony, we would be faced with a difficult decision. Because the defendant in this case neither objected to Dr. Brant's testimony, nor appealed its admission into evidence, however, we review not for abuse of discretion or plain error, but only for a "plain usurpation of the jury's function constituting a violation of due process." *Boch Oldsmobile*, 909 F.2d at 661. "[O]nly 'rare instance[s] of a clear usurpation of power' will render a judgment void." *Id.* at 662 (citation omitted). The testimony in question did not rise to this level.

We base this conclusion on three factors. First, Dr. Brant was subjected to rigorous cross examination by defense counsel. In particular, defense counsel questioned Dr. Brant with respect to several scholarly articles which contradicted or called into question Dr. Brant's opinions concerning the phenomenon of repressed memories in alleged childhood sexual abuse cases. Second, defense counsel repeatedly attempted to elicit opinion testimony from Dr. Brant that she believed the plaintiff's allegations. Dr. Brant steadfastly refused to give such an opinion, explicitly testifying: "I had no way of ultimately determining whether they were true or not." Finally, the district court instructed the jury as follows:

You should consider each expert opinion received in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel

---

5. Relevant evidence is admissible unless its probative value is substantially outweighed by the risk of unfair prejudice, confusion, or waste of time. *United States v. Argencourt*, 996 F.2d 1300, 1305 (1st Cir.1993); Fed.R.Evid. 403.

6. The defendant in *Rosales* had not objected to the proffered testimony and, therefore, our review was confined to "plain error" rather than

abuse of discretion. *Rosales*, 19 F.3d at 765. Because the defendant in the instant case did not properly appeal the judgment, our review is even more strictly constrained—we review only for a "plain usurpation of power constituting a violation of due process." *See Boch Oldsmobile*, 909 F.2d at 661.

that it is outweighed by other evidence, you may disregard the opinion entirely.

Thus, the jury was presented with evidence contradicting or calling into question Dr. Brant's opinions, Dr. Brant herself testified that she had no way of knowing whether the plaintiff's allegations were true, and the court expressly instructed the jurors that they were free to reject the opinions offered by Dr. Brant. *Cf. Rosales,* 19 F.3d at 766. Under the circumstances, we conclude that Dr. Brant's testimony did not so plainly usurp the function of the jury as to constitute a violation of due process.

■ Defendant also contends that plaintiff's therapist, Jacobsen, was improperly allowed to provide expert testimony, and that the jury was therefore "corrupted." Plaintiff maintains that Jacobsen testified only as a fact witness. We have reviewed Jacobsen's testimony and think that at certain points she went beyond what is traditionally allowed for a fact witness.[7] Again, however, defendant neither objected to Jacobsen's testimony nor appealed its admission into evidence. Moreover, while some of her testimony might have been objectionable, we do not think its admission was particularly prejudicial. We discern no violation of due process.

## IV.

■ Defendant's final contention is that Judge Mazzone failed to comply with the certification requirements of Rule 63 of the Federal Rules of Civil Procedure when he took over the case for visiting Judge Van Sickle.[8] Defendant contends that this failure constitutes "mistake, inadvertence, surprise, or excusable neglect" within the meaning of Rule 60(b)(1).

Just before the close of evidence, visiting Judge Van Sickle informed counsel for both parties that, although he would be able to hear the rest of the evidence in the case, he would be unavailable for closing arguments, the jury charge, and jury deliberations. The parties had already submitted proposed jury instructions to Judge Van Sickle, and he discussed those instructions with counsel. He informed counsel that he would prepare jury instructions for his successor to use in charging the jury. On June 30, 1993, Judge Mazzone held a lobby conference with counsel to discuss his taking over the case. The transcript of the June 30, 1993, lobby conference speaks for itself.

THE COURT: You all, of course know that this case was originally assigned to me and then went to visiting Judge Van Sickle, and because he is no longer available and is unable to proceed, I am stepping in. Now I know you know I've done a lot of work in the case, but the rules require me to certify that I am familiar with the case, *and I will so certify my familiarity with the record in the case....*

If you have any objections to that, the case will not proceed. So, I am calling upon you now to tell me what your objections are. All I'm going to do is hear closing statements. I have the instructions that Judge Van Sickle and you have worked out, and I will give those to the jury. I have the jury form which you have worked out and I will give that. So my strong feeling is that we should put this matter behind us, but if you object to it, then I will have to get the whole transcript and I will have to read it.

PLAINTIFF'S COUNSEL: ... We are content that you're familiar enough with the case and that this certification is sufficient for us to proceed....

DEFENSE COUNSEL: ... We are also content, with the request that we be allowed to briefly read through this [proposed jury instructions prepared by Judge Van Sickle].

Defense counsel did not object to Judge Mazzone finishing the case, and the transcript plainly indicates that Judge Mazzone

---

7. For example, she was allowed to give her opinion that the plaintiff "will always have to struggle with the damage that I think was done."

8. Rule 63 provides, in pertinent part: "If a trial or hearing has been commenced and the judge is

unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties."

did certify his familiarity with the record. Accordingly, defendant's claim fails.

### V.

As a final matter, we note that defendant makes a general claim for relief under Rule 60(b)(6), asserting that "it would be inequitable that the plaintiff continue to have the benefit of a judgment obtained by what ... is a manifest miscarriage of justice." For the reasons previously stated herein, we find no exceptional circumstances excusing defendant's failure—on two separate occasions—to prosecute his appeals of this case.

### CONCLUSION

The decision of the district court denying defendant's motion to vacate the judgment in this case is *affirmed.*