NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

_____

**BAP NO. MW 19-016**

_____

**Bankruptcy Case No. 11-43424-CJP**

_____

**FORMATECH, INC.,**
**Debtor.**

_____

**CANAIMEX, INC. and**
**YISHENG ZHANG,**
**Appellants,**

**v.**

**MASSACHUSETTS GROWTH CAPITAL CORPORATION and**
**DAVID M. NICKLESS, Chapter 7 Trustee,**
**Appellees.**

_____

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Hon. Christopher J. Panos, U.S. Bankruptcy Judge)**

_____

**Before**
**Lamoutte, Cary, and Fagone,**
**United States Bankruptcy Appellate Panel Judges.**

_____

**Anthony L. Gray, Esq., on brief for Appellants.**
**James M. Liston, Esq., on brief for Appellee, Massachusetts Growth Capital Corporation.**
**David M. Nickless, Esq., on brief for Appellee, David M. Nickless, Chapter 7 Trustee.**

_____

**December 19, 2019**

_____

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

Canaimex, Inc. and Yisheng Zhang (collectively, the "Defendants") were sued by the chapter 7 trustee. At the outset of the litigation, they appeared and defended against the trustee's lawsuit. Later, their counsel withdrew and the Defendants ceased participating in the litigation. To make matters worse, they did not keep the trustee or the court apprised of their current mailing address. The litigation continued and eventually the bankruptcy court entered a default judgment against them. After an unsuccessful collateral attack on the judgment in a Canadian court, the Defendants returned to the bankruptcy court and sought relief from the judgment, claiming that it was void. The court denied two requests from the Defendants: one to reopen the chapter 7 case and a separate, but related, request to reopen the adversary proceeding in which the judgment had entered. The Defendants have taken an appeal from one order, the one denying their request to reopen the chapter 7 case.

We agree with the bankruptcy court's ultimate conclusion that the Defendants would be unable to obtain relief from the judgment under Fed. R. Civ. P. 60(b). As a result, there was no abuse of discretion in the court's refusal to reopen the chapter 7 case.

## BACKGROUND

### I. The Bankruptcy Filing and Post-Petition Events

Formatech, Inc. (the "Debtor"), a developer and manufacturer of clinical trial drugs and supplies, filed a chapter 11 petition in August 2011. Several months later, the Debtor sought permission to sell its assets under § 363 and an auction was scheduled for that purpose.[1]

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. All references to "Rule" are to the Federal Rules of Civil Procedure.

Two days before the auction, Canaimex, a Canadian pharmaceutical company, submitted an offer to purchase all of the Debtor's assets for $690,000. Canaimex's bid was signed by its president, Yisheng Zhang. Along with the bid, Canaimex delivered a deposit check in the amount of $69,000 to the Debtor.

At the auction, Canaimex submitted a winning bid of $1,070,000 and entered into an asset purchase agreement with the Debtor reflecting that bid. Several days after the auction, however, the deposit check was dishonored. The Debtor subsequently sold the assets to the next highest bidders. Following that sale, the case was converted to chapter 7 and David M. Nickless (the "Trustee") was appointed as the chapter 7 trustee.

## II. The Adversary Proceeding

In April 2012, the Trustee commenced an adversary proceeding against the Defendants seeking to recover $69,000 (the amount of the dishonored deposit check), with interest and costs. For the balance of 2012 and a portion of 2013, the Defendants participated extensively in the adversary proceeding, by filing, among other things, an objection to the Trustee's first motion for default judgment, an answer, an amended answer and counterclaim, and initial disclosures. In April 2013, counsel for the Defendants sought to withdraw from their representation. The bankruptcy court permitted the withdrawal and granted the Defendants one month to engage successor counsel. Successor counsel did not appear within the allotted time, and the Defendants made no timely request for additional time to retain counsel. Instead, in a letter dated July 12, 2013 ("Zhang's letter"), Zhang informed the bankruptcy court that the Defendants had a new address: Suite 17053, 2001 University, Montreal, Quebec H3A 2A6.

3

The bankruptcy court issued an order to show cause, directing the parties to explain their failure to file a pretrial memorandum. Although the bankruptcy court mailed a copy of that order to the address provided in Zhang's letter, it was returned undelivered. The Trustee responded to the order to show cause, stating that he was unable to communicate with Canaimex, that mail addressed to Canaimex at its prior address had been returned as undeliverable, and that he had left a message using the phone number listed for Canaimex on the internet.

The bankruptcy court then directed the Trustee to file a pretrial memorandum or motion for default within 14 days. The Trustee responded by filing a motion with a supporting affidavit, asking the court to direct the clerk to enter a default against the Defendants ("Motion for Default"). In his affidavit, the Trustee recounted his unsuccessful efforts to contact the Defendants by mail or phone and asserted they had failed to: (1) identify successor counsel; (2) answer discovery; (3) respond to the Trustee's phone call; (4) communicate with the Trustee's office regarding the pretrial memorandum; and (5) plead or otherwise defend. The Trustee further represented that the clerk should enter a default under Rule 55(a). The Motion for Default did not include any request for the clerk or the court to enter a default judgment.

On September 11, 2013, the clerk entered a notice of default against the Defendants which provided: "Upon application by plaintiff for entry of a default judgment, together with the proposed judgment, this matter will be presented to the court for final action." On the same day, the bankruptcy court issued an order stating: "The Trustee is to attempt to serve the Defendants with the notice of default and file a certificate of service." The next day, the Trustee filed a certificate of service indicating that he had served the notice of default on the Defendants at several addresses, including 2001 University, Suite 17053, Montreal, Quebec H3A 2A6 CANADA—the address provided in Zhang's letter.

In November 2013, the bankruptcy court entered an order granting the Motion for Default in the absence of objections and again directing the Trustee to submit a proposed form of judgment. It does not appear that the Trustee submitted a proposed judgment, by motion or otherwise. Nonetheless, in December 2013, the bankruptcy court entered judgment against the Defendants in the amount of $69,000, plus pre- and post-judgment interest (the "Default Judgment"). The court also dismissed the Defendants' counterclaim. In January 2014, the clerk made the following notation on the docket in the adversary proceeding: "Adversary Case 4:12-ap-4043 Closed." Several months later, the Trustee assigned the Default Judgment to one of the Debtor's secured creditors, Massachusetts Growth Capital Corporation ("MGCC"), as part of a court-approved compromise. MGCC remains the current holder of the Default Judgment.

III. **Events Following the Main Case Closing**

A. **Litigation in Canada**

In August 2015, the Trustee was discharged and the chapter 7 case was closed under § 350. Several months later, MGCC commenced proceedings to enforce the Default Judgment against the Defendants in the Canadian Superior Court for the Province of Quebec, District of Montreal (the "Canadian Superior Court"). Complaining they received inadequate notice that a judgment could be rendered against them, the Defendants maintained that the Default Judgment was unenforceable. After conducting a two-day evidentiary hearing in January 2018, the Canadian Superior Court entered judgment in favor of the Trustee, recognizing the validity and enforceability of the Default Judgment. The Canadian Superior Court found that: (1) two weeks after Zhang's letter, Canaimex moved again, rendering the address provided in that letter invalid; and (2) the Defendants never advised the bankruptcy court of Canaimex's new address.

5

Accordingly, the Canadian Superior Court concluded that the Defendants had "themselves to blame for the fact that they did not receive [notice of] proceedings subsequent to July 12, 2013." That court further opined: "[I]t is not surprising that the [Default] Judgment was rendered against the [Defendants]. In fact, under the circumstances, it would have been surprising if a judgment had not been rendered against them." The Defendants appealed the judgment of the Canadian Superior Court and the Court of Appeal for the Province of Quebec Registry of Montreal affirmed in October 2019.

### B. The Motion to Reopen the Adversary Proceeding

Meanwhile, in November 2018, the Defendants filed a "Motion to Reopen and for Relief from Judgment" (the "Motion to Reopen AP"), along with a supporting memorandum of law and affidavits in the adversary proceeding. Relying on Rules 55(c) and 60(b)(4), the Defendants sought to reopen the adversary proceeding and to "remove" the Default Judgment on the grounds that it was void. In support of this request, they argued that the Default Judgment violated their right to due process because: the "Trustee never requested or applied for a default judgment"; they "never received notice that default judgment was going to enter"; the Trustee knowingly served them at an incorrect address; and the bankruptcy court failed to conduct a hearing on seven days' notice as required by Rule 55(b)(2). The Defendants urged the bankruptcy court to grant the motion so they could present "their meritorious defense."

On November 29, 2018, without a hearing, the bankruptcy court entered an order in the adversary proceeding which provided: "The court shall not act on the [Motion to Reopen AP] pending the Defendants seeking to reopen the main case and the court entering an order with respect to such motion in the main case."

6

**C.     The Motion to Reopen Main Case**

The Defendants promptly filed, in the chapter 7 case, a "Motion to Reopen Main Case and for Relief from Judgment in the Adversary Proceeding" (the "Motion to Reopen Main Case"). They asked the court "to reopen the main case so [they could] also reopen the Adversary Proceeding and seek relief from the [D]efault [J]udgment." In their supporting memorandum of law—which was nearly identical to the one filed with the Motion to Reopen AP—they urged the bankruptcy court to permit "a full trial on the merits" in the adversary proceeding.

The Trustee opposed the Motion to Reopen Main Case, asserting that he had sent pleadings to Canaimex's "new address, as well as several others . . . ." Moreover, he added, the Defendants "were fully aware of the litigation" and of the risk associated with failing to obtain successor counsel. "If [the Defendants] were deprived of the ability to be heard and defend as they allege," he contended, it was "due to their own . . . failures to act from at least May 1, 2013, including their failure to provide whatever address they asserted should be used for further pleadings."

MGCC also objected to the Motion to Reopen Main Case, maintaining that there were "no valid grounds" for relief from the Default Judgment under Rule 60(b). In support, MGCC emphasized that the Defendants participated in the adversary proceeding for a year and a half before effectively abandoning their defense and allowing the Default Judgment to enter.

**D.     The Hearing on the Motion to Reopen Main Case**

Following a hearing on January 24, 2019, the bankruptcy court issued findings of fact and conclusions of law from the bench and entered an order denying the Motion to Reopen Main Case (the "Section 350 Order"). The court stated that the factors relevant to a motion to reopen under § 350 included:

the length of the time that the case has been closed, whether a non-bankruptcy forum has jurisdiction to determine the issue, . . . the basis for reopening the case, . . . whether any parties would suffer prejudice should the Court grant or deny the motion to reopen, the extent of the benefit to the debtor by reopening, and whether it's clear at the outset that no relief would be forthcoming to the debtor [by] granting reopening . . . where the debtor is the moving party.

Applying these factors, the court determined that: (1) reopening the case would prejudice both the Trustee and MGCC given, among other things, the passage of time since the events that were the subject of the Defendants' counterclaim; (2) the Canadian Superior Court had competence to determine the issues, and had spent years doing so; and (3) Zhang's assertion that he had not been given an opportunity to defend against the Default Judgment rang hollow where—despite his "responsibility to understand what was going on in the case"—he gave the court an incorrect address and "didn't take any active measure to provide a new notice address." The court observed that even if the "procedural steps contemplated by Rule 55 were not exactly followed," the Defendants nonetheless became aware that a final judgment entered against them, as evidenced by their participation in the Canadian litigation. Finally, the court suggested that the Defendants were unlikely to secure their desired remedy—an order vacating the Default Judgment—in light of the passage of time, observing that "even Rule 60(c)(1) requires that the motion be brought within a reasonable time." The Section 350 Order was then entered on the docket in the chapter 7 case.

Three days after the hearing, the bankruptcy court entered an order on the docket in the adversary proceeding. This order (the "AP Order") denied the Defendants' Motion to Reopen AP. The court did not convene a hearing on the Motion to Reopen AP, or articulate its rationale for denying that motion, except to cross-reference the Section 350 Order.

This appeal followed.

8

## APPELLATE JURISDICTION

### I.    Scope of Appeal

In their notice of appeal—which they filed in the main case—the Defendants identified the Section 350 Order as the sole subject of the appeal.  They made no express effort to appeal from any other order, including the AP Order.  The Trustee and MGCC advance several arguments about these failures and contend that this appeal is doomed as a result of them.

We will review the order specified in the Defendants' notice of appeal, namely the Section 350 Order.  See Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 3 (1st Cir. 2002) ("As a general rule, a notice of appeal must specify the orders and judgments that the appellant intends to contest.").  But the applicable rule of appellate practice—the one requiring the appellant to specify the order or judgment that is the subject of the appeal—is not an immutable one.  See id. Instead, the court is to "construe notices of appeal liberally and examine them in the context of the record as a whole."  Id.  The net result is that we have some flexibility about when to overlook omissions in an appellant's notice of appeal.  Díaz Aviation Corp. v. Airport Aviation Servs., Inc., 716 F.3d 256, 262 (1st Cir. 2013); Alstom Caribe, Inc. v. George P. Reintjes Co., 484 F.3d 106, 112 (1st Cir. 2007).  We are not, however, duty bound to exercise that discretion and appellants should take particular care when preparing notices of appeal.

We will not utilize that flexibility here to expand the scope of the appeal.  If the Defendants wanted to challenge the propriety of the AP Order, they should have filed a timely notice of appeal on the docket in the adversary proceeding, specifying that intention.  We understand why the Defendants may have conflated the two orders (the Section 350 Order and the AP Order):  the issues regarding the reopening of the main case and the adversary proceeding

9

are inextricably intertwined and seem to have been treated as such by the bankruptcy court. That said, even if we were to accept the Defendants' invitation, the result here would be the same. Stated differently, the outcome of this appeal would be the same whether we restrict our review to the Section 350 Order or whether we expand it to include the AP Order as well.

## II.  Finality

We may hear appeals from "final judgments, orders, and decrees[.]" 28 U.S.C. §§ 158(a) and (b); see also Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). Generally, an order denying a motion to reopen a bankruptcy case is a final order. Ludvigsen v. Osborne (In re Ludvigsen), BAP No. MB 14-039, 2015 WL 3733193, at *3 (B.A.P. 1st Cir. Jan. 16, 2015) (citations omitted). We therefore have jurisdiction to consider the Section 350 Order.

## STANDARD OF REVIEW

We review the Section 350 Order for an abuse of discretion. See In re Ludvigsen, 2015 WL 3733193, at *3 (citations omitted). The decision to grant or deny a motion to reopen a case under § 350 is committed to the bankruptcy court's sound discretion. Mass. Dep't of Revenue v. Crocker (In re Crocker), 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007). In evaluating motions to reopen, courts generally consider the circumstances of the case, including:

> the length of time that the case was closed; whether a nonbankruptcy forum, such as state court, has the ability to determine the issue sought to be posed by the debtor; whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post bankruptcy, of the parties; whether any parties would be prejudiced were the case reopened or not reopened; the extent of the benefit which the debtor seeks to achieve by reopening; and whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

Id. (quoting In re Otto, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004)) (alterations omitted).

**DISCUSSION**

Before addressing the merits, we pause to clear away some underbrush. The parties have devoted significant attention to questions relating to what should have happened in the bankruptcy court, what process should have been followed, and which orders should have been the subject of this appeal. For example, the parties disagree about whether the Defendants needed to secure an order reopening the chapter 7 case before the court considered their request for relief under Rule 60(b) in the adversary proceeding. This may be an open question. See, e.g., Brantley v. Union Motor Co. (In re Brantley), Adv. No. 96-1522, 1997 WL 74663, at *1 (Bankr. W.D. Ark. Jan. 15, 1997) (stating that "there is no authority to open an adversary case without first reopening the case"); cf. Cohn v. Wells Fargo Home Mortg., Inc. (In re Cohn), Adv. No. 07-90680, 2008 WL 8013412, at *2-3 (Bankr. S.D. Cal. Mar. 10, 2008) (concluding that closed case must be reopened before related adversary proceeding can proceed and that requirement is not jurisdictional, but is instead a procedural prerequisite for invoking jurisdiction). Whether § 350 authorized the clerk to close the adversary proceeding is a question that we do not decide here. Section 350 applies to a "case," see 11 U.S.C. § 350(a) & (b), and title 28, title 11, and the Federal Rules of Bankruptcy Procedure all distinguish between a "case" and a "proceeding." See, e.g., 28 U.S.C. § 1334(a) & (b). While there may be room to consider these and other procedural questions raised by the parties in another context, we do not fight our way through the thicket: despite missteps along the way, the bankruptcy court properly rejected the Defendants' contention that the Default Judgment was void. Even if the court had reopened the chapter 7 case *and* the adversary proceeding, the request for relief from the Default Judgment was doomed to fail.

## I.      The Applicable Standards: Section 350 and Rule 60(b)(4)

A court need not reopen a case if the stated reasons for doing so could not be accomplished. In other words, futility can defeat a motion to reopen under § 350. Diaz Rodriguez v. Olympic Mortg. Corp. (In re Diaz Rodriguez), 357 B.R. 691, 699 (Bankr. D.P.R. 2006) (citation omitted); see also In re Ludvigsen, 2015 WL 3733193, at *4 (stating the bankruptcy court should deny a motion to reopen if reopening the case "would serve no purpose"); Smyth v. Edamerica, Inc. (In re Smyth), 470 B.R. 459, 462 (B.A.P. 6th Cir. 2012) (citations omitted); In re Gagne, No. 02-10966, 2010 WL 5209243, at *1 (Bankr. D. Me. Dec. 16, 2010) (citation omitted). The only reason that the Defendants wanted to reopen the adversary proceeding or the case was to challenge the Default Judgment as void under Rule 60(b)(4). That effort, for reasons we describe below, could not have been successful.[2] As a result, the error, if any, committed in requiring the reopening of the main case was harmless. See Harutyunyan v. Gonzales, 421 F.3d 64, 70 (1st Cir. 2005) (stating, in an immigration case, that a harmless error is one that "would likely [not] have made a dispositive difference in the outcome of the proceeding") (citations omitted).

"[T]he concept of void judgments is narrowly construed." Hoult v. Hoult, 57 F.3d 1, 6 (1st Cir. 1995) (citation omitted). "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow

---

[2] The parties have not made arguments here about the preclusive effect, if any, of the judgment issued by the Canadian Superior Court. We do not address those effects, except to say that they would appear to present another reason why the Defendants could not have mounted a successful challenge to the Default Judgment.

the rule." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010) (citations omitted). "'A judgment is not void,' for example, 'simply because it is or may have been erroneous.'" Id. (quoting Hoult, 57 F.3d at 6) (other citation omitted). "Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." Id. at 271 (citations omitted). "It is essential to state, that total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and that only . . . a clear usurpation of power will render a judgment void." United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661-62 (1st Cir. 1990) (citation omitted) (internal quotation marks omitted). As the First Circuit further instructs, a judgment is void "*only* if, from its inception, it was a legal nullity." Hoult, 57 F.3d at 6 (emphasis added) (citation omitted).

## II.     The Standards Applied

In this case, the alleged infirmity in the Default Judgment is not jurisdictional. The Defendants did not contend that the Default Judgment should be lifted for jurisdictional reasons, and their counsel expressly disavowed that theory at oral argument. Instead, the alleged defect relates to the Defendants' invocation of their due process rights. Specifically, the Defendants insist that the Default Judgment is void because the Trustee did not expressly apply for the entry of a default judgment as required by Rule 55(b)(2), they did not receive notice that a default judgment was going to enter, and the court failed to conduct a hearing as required by Rule 55(b)(2).

In this case, the procedures outlined in Rule 55(b) were not followed.[3] The Trustee did not file a separate request for a default judgment with a supporting affidavit showing the amount due, as required by Rule 55(b)(1). There was no formal application under Rule 55(b)(2), and the bankruptcy court did not hold a hearing on an explicit application for entry of judgment. These procedural irregularities do not, however, rise to the level of a due process violation as contemplated by Rule 60(b)(4).

"It is well established that [the] protections contained in Rule 55 . . . are essentially procedural and the failure to abide by them does not necessarily render a resultant judgment void." United States v. Manos, 56 F.R.D. 655, 658 (S.D. Ohio 1972). For instance, courts have held that failure to give notice of the application for judgment by default in compliance with Rule 55(b) is "a serious procedural error, but it does not of itself render a judgment void." Sonus Corp. v. Matsushita Elec. Indus. Co., 61 F.R.D. 644, 649 (D. Mass. 1974) (citing Winfield Assocs. Inc. v. Stonecipher, 429 F.2d 1087 (10th Cir. 1970); Manos, 56 F.R.D. at 659).

---

[3] Rule 55 provides, in pertinent part:

  (b) Entering a Default Judgment.
      (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due— must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
      (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
          (A) conduct an accounting;
          (B) determine the amount of damages;
          (C) establish the truth of any allegation by evidence; or
          (D) investigate any other matter.

Fed. R. Civ. P. 55.

14

One commentator has suggested that "failure to give notice under . . . Rule 55(b)(2) may, at times, be harmless."[4]  Id. at 648 (citing 7 Moore's Federal Practice ¶ 60.25[2], p.311 (2d ed. 1973)).  "Such a procedural defect should be considered in the light of surrounding circumstances," Winfield, 429 F.2d at 1091 (citation omitted) (internal quotation marks omitted), and "[i]t must be kept in mind that the provisions of Rule 55 should not be used to punish technical violators of the Federal Rules of Civil Procedure."  Manos, 56 F.R.D. at 659.  In this regard, one court explained:

> [T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection.  Furthermore, the possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy.

H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970).

Here, the Defendants have never claimed, and the record does not suggest, that there was a wholesale failure of service of process of the sort that would render a judgment void for lack of jurisdiction.  See Lefcourt v. Health Enrollment Grp., Inc., No. 3:17-CV-2617-G, 2018 WL 3862082, at *2 (N.D. Tex. Aug. 14, 2018) ("Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void.").  The record, instead, reflects that the Defendants were served with the Trustee's

---

[4]  This observation was made regarding a prior version of Rule 55.  While the current version of Rule 55(b)(2) requires notice of the application at least 7 days before the hearing, a prior version of the rule required only 3.  Therefore, case law decided under the prior version of the rule is still instructive for our current purposes.

summons and complaint.  A mistake of the type now before us—i.e., the failure to follow Rule 55's procedures—does not render a default judgment void under Rule 60(b)(4).  If anything, such an omission might render the Default Judgment vulnerable to challenge under Rule 60(b)(6), although that question is not before us.  See, e.g., Manos, 56 F.R.D. at 659 (stating a clerk's error under Rule 55 "presents a problem of a voidable judgment within the meaning of Rule 60(b)(6) and not a void one pursuant to Rule 60(b)(4)"); cf. Lefcourt, 2018 WL 3862082, at *3 (ruling default judgment was void where defendant did not receive service of process in the manner provided for by state law and court lacked personal jurisdiction).  Thus, the Defendants' contention that they did not receive notice that a default judgment might enter falls short.

The Defendants' suggestion that they did not appreciate the risk of a potential adverse judgment absent actual notice in accordance with Rule 55(b) is unpersuasive given that the prayer for relief in the Trustee's complaint requested a $69,000 judgment.  Furthermore, the Defendants' professed lack of awareness "ignores an abecedarian rule of civil practice: parties to an ongoing case have an independent obligation to monitor all developments in the case and cannot rely on the clerk's office to do their homework for them." Witty v. Dukakis, 3 F.3d 517, 520 (1st Cir. 1993).  Additionally, we agree with those courts (including some within this circuit) which have imposed on litigants an affirmative duty to inform the court and opposing parties of any change of address.  See, e.g., Bradford v. Mass. Dep't of the Trial Court, No. 17-12245-NMG, 2018 WL 2392003, at *1 (D. Mass. May 24, 2018) (discussing L.R., D. Mass. 83.5.5(h), a local rule codifying this requirement); see also Adams v. Adams, No. 1:17-cv-00200-GZS, 2017 WL 2819754, at *1 (D. Me. June 29, 2017) (charging pro se litigant with responsibility for advising court and other party of change of address or telephone number); Spears v. Superintendent, Mid-State Corr. Facility, No. 9:05-CV-605 (GLS/GHL), 2007 WL 1101114,

at *1 (N.D.N.Y. Apr. 12, 2007) (sua sponte dismissing action where pro se plaintiff failed to notify court of current address and to prosecute action). "For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the court informed of address changes." Spears, 2007 WL 1101114, at *1. This obligation "is a matter of common sense, not legal sophistication." Am. Arbitration Ass'n, Inc. v. Defonseca, No. 93 Civ. 2424 (CSH), 1997 WL 102495, at *2 (S.D.N.Y. Mar. 6, 1997).

After the withdrawal of their counsel, the Defendants were under an obligation to monitor the electronic docketing system for the entry of new filings and orders. Vargas Torres v. Toledo, 672 F. Supp. 2d 261, 264 (D.P.R. 2009) (citing Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este, 456 F.3d 272, 276 n.3 (1st Cir. 2006); Witty, 3 F.3d at 520). They were also obligated to inform the court and opposing parties of their whereabouts. Apparently, the Defendants did inform the bankruptcy court of an initial change of address (indicating an awareness of the pendency of the litigation as well as an understanding of their duty to inform), but then failed to inform the court of a subsequent change of address. The Trustee, acting on the information the Defendants had provided, served the notice of default on the Defendants. The Trustee took reasonable steps to provide the Defendants with notice of the default proceeding.[5] The Trustee was not required to undertake an open-ended search for the Defendants, especially in light of their obligation to keep the court and other parties apprised of their address. To the extent that the Defendants' inaction in the proceedings leading to the Default Judgment was the consequence of lack of notice, we agree with the Canadian Superior Court and the bankruptcy court that "the responsibility for that is entirely at [the Defendants'] feet . . . ." In re Tatum,

---

[5] At oral argument, the Defendants were unable to explain what, in these circumstances, the Trustee should have done, but failed to do, in terms of making them aware of the progress of the litigation.

No. 09-12170, 2012 WL 2076424, at *4 (Bankr. D. Kan. June 7, 2012) (refusing to vacate default judgment under analogous circumstances). To rule otherwise would be to endorse a "catch-me-if-you-can" approach to civil litigation, an approach we cannot condone, especially where, as here, the Defendants have been served with process and have extensively participated in the case for an extended period of time. In reaching this conclusion, we are mindful of the Supreme Court's instruction that "[d]ue process does not require actual notice." Espinosa, 559 U.S. at 272 (quoting Jones v. Flowers, 547 U.S. 220, 225 (2006)).

The Defendants' contention that the Default Judgment is void because the bankruptcy court failed to conduct a hearing is also flawed. As for whether a hearing is invariably required for the entry of a default judgment, Rule 55(b)(1) supplies the answer. See Fed. R. Civ. P. 55(b)(1) (providing that the "court *may* conduct hearings" when necessary to, among other things "determine the amount of damages") (emphasis added); see also Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1321 (7th Cir. 1983) (stating a hearing on damages is unnecessary for entry of a judgment by default where "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits") (citations omitted). Here, as previously noted, in his prayer for relief, the Trustee requested judgment in the amount of the deposit check—$69,000—and the principal amount of the Default Judgment reflected that sum. The amount of the Trustee's damages was easily calculated by reference to the parties' contract.

To reopen the Default Judgment under Rule 55(c), which incorporates Rule 60(b), the Defendants "needed to show that the default was not the result of their culpable conduct"—a burden the Defendants could not and did not satisfy. In re Tatum, 2012 WL 2076424, at *4 (citations omitted). Instead the record before us reflects a disregard on the Defendants' part for

18

the status of the bankruptcy court proceedings.  As one court of appeals aptly stated when asked

to set aside a default judgment under Rules 55(c) and 60(b): "A moving party need not come into

court completely unblemished, but neither must [an] . . . appellate court ignore the party's

obvious culpable behavior."  United States v. Timbers Preserve, 999 F.2d 452, 455 (10th Cir.

1993) (refusing to vacate default judgment under Rule 60(b)(3) in light of defendant's fugitive

status) (citing United States v. One Lot of $25,721 in Currency, 938 F.2d 1417, 1422 (1st Cir.

1991)).  Ultimately, absent a jurisdictional defect or a due process violation, the Default

Judgment does not qualify as "void" under the standard articulated in Espinosa.  559 U.S. at 270.

The bankruptcy court, therefore, committed no abuse of discretion in refusing to reopen the

chapter 7 case for the ultimate purpose of relieving the Defendants from the Default Judgment in

the adversary proceeding.

## CONCLUSION

The Section 350 Order is hereby **AFFIRMED**.